IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LaTONYA COPELAND,

        Plaintiff,

v.

Case No.: 3:08CV553|MCR|MD

PRISON HEALTH SERVICES, INC., a foreign
corporation;
JOSEPH P. MONASTERO, M.D., in his
individual capacity;
ELIZABETH McCORMACK, in her individual
capacity; and
THERESA FRANKLIN, LPN, in her individual
capacity,

        Defendants.

_____/

## COMPLAINT

Plaintiff, LaTONYA COPELAND ("COPELAND"), by and through her

undersigned attorney, sues the Defendants, PRISON HEALTH SERVICES, INC., a

foreign corporation ("PHS"); JOSEPH P. MONASTERO, M.D. ("MONASTERO"), in

his individual capacity; ELIZABETH McCORMACK, ARNP ("McCORMACK"), in her

individual capacity; and THERESA FRANKLIN, LPN ("FRANKLIN") in her individual

capacity, and alleges:

## I. INTRODUCTION
## JURISDICTION AND VENUE



I. This is an action for damages and attorneys fees arising under 42 U.S.C. §§1983 and 1988, and for damages arising under the common law of the State of Florida.

II. This action makes issue and alleges a violation of the United States Constitution, including, but not limited to, a violation of the Fourteenth Amendment which makes illegal the deliberate indifference to a pre-trial detainee's serious medical condition.

1. This Honorable Court has original jurisdiction over this action and the parties named herein, pursuant to 42 U.S.C. §§1983 and 1988; the U.S. Constitution; the provisions in 28 U.S.C. §§1331 and 1343, et. seq.; and the ancillary jurisdiction of this Court pursuant to 29 U.S.C. §1367 for all state law claims.

2. Venue is posited in United States District Court, Northern District of Florida, Pensacola Division, pursuant to 28 U.S.C. §1391 and N.D. Fla. Loc. R.3.2(a)(1); and by virtue of the status of each party as more fully described below.

3. The acts, omissions and practices described hereafter all occurred within the jurisdiction of the United States District Court in and for the Northern District of Florida.

4. Plaintiff, COPELAND, seeks an award of compensatory and punitive damages, costs and expenses and reasonable attorney's fees pursuant to 42 U.S.C. §1983, more specifically described below. Fee entitlement is as alleged

2

pursuant to 42 U.S.C. §1988.

5.     At all times material hereto, the acts, omissions, practices and other conduct of each Defendant were committed under color of state or local law.

6.     At all times material hereto, the acts and omissions of Defendants MONASTERO, McCORMACK, and FRANKLIN were committed within the course and scope of their employment with Defendant PHS, which at all times relevant hereto was under contract with the Sheriff of Escambia County Florida to provide medical services to pre-trial detainees and other inmates in the custody of the Sheriff of Escambia County and located in the Escambia County Jail.

## II. PARTIES

7.     At all times material hereto, Plaintiff, COPELAND, was an adult resident of Escambia County and a citizen of the State of Florida.

8.     At all times material hereto, Defendant PHS, contracted with Escambia County Sheriff, to staff and run the Escambia County Jail Infirmary and provide medical treatment to the inmates of the Escambia County Jail; and was a duly organized health care provider that provided medical treatment to Plaintiff.

9.     At all times material hereto, Defendants MONASTERO, McCORMACK, and FRANKLIN were agents of PHS, an independent contractor hired by the Escambia County Sheriff to oversee and provide all in-house medical services to inmates detained at the Escambia County Jail.   Defendants MONASTERO, McCORMACK, and FRANKLIN furnished medical services to

3

inmates at the Escambia County Jail as part of PHS' contractual duties, and at all times material acted within the course and scope of said employment. Despite MONASTERO; and McCORMACK and FRANKLIN not being government employees at any time relevant, they all acted under color of law by virtue of their employment through PHS and PHS' contractual relationship with the Escambia County Sheriff. They are sued in their individual capacities.

10. Plaintiff COPELAND has retained the services of the undersigned attorney and is obligated to pay a reasonable attorney's fee for such services in pursuing the claims asserted herein.

## III. FACTS APPLICABLE TO ALL COUNTS

11. On or about July 2, 2005, Plaintiff COPELAND was arrested by the Escambia County Sheriff's office and at all times material hereto was an inmate at Escambia County Jail, in Escambia County Florida.

12. On or about August 25, 2005, Plaintiff Copeland completed a medical request form complaint that her eye is extremely inflamed, painful, and continually draining tears along with pus.

13. On or about January 13, 2006, COPELAND, completed a medical request form complaining of eye redness and requesting eye drops and she was referred to a nurse practitioner.

14. On or about January 27, 2006, COPELAND completed another medical request form complaining of eye redness, swelling, running, and sensitivity

4

to light and she was triaged by FRANKLIN.

15.     On or about March 21, 2006, COPELAND completed another medical request form complaining of extreme eye redness, watering, light sensitivity, and pain.

16.     On or about April 22, 2006, COPLEAND completed another medical request form complaining eye redness, swelling, and starting to protrude and she was referred to a nurse practitioner.

17.     On or about May 27, 2006, COPELAND completed another medical request form complaining of blurred vision and black disc floating.

18.     On or about July 7, 2006, COPELAND completed another medical request form complaining of extreme eye redness, pain, tearing, blurred vision, black spots, and light sensitivity.

19.     On or about July 11, 2006, COPELAND completed another medical request form complaining of eye swollen complete shut, extreme pain in left temple and eye socket, blurred vision, and floating spots and discs. She wrote "Please advise – HELP! HELP! HELP!". She was referred to a nurse practitioner.

20.     On or about July 28, 2006, COPELAND completed another medical request form complaining of eye redness, swelling, pain, cluster headaches and extreme tearing. She wrote, "Please help I can't see 1 foot in front of me." She was not seen until August 1, 2006, by McCORMACK.

21.     On or about September 27, 2006, she was seen for the first time by a

5

physician, Jennifer Murray, M.D., at the Medical Center Clinic.

22. From January 13, 2006, through September 27, 2006, COPELAND was provided eye drops and eye creams and wash cloths for her complaints. The applicable standard of care required that COPELAND be immediately referred to an ophthalmologist. The failure of McCORMACK and FRANKLIN to immediately refer COPELAND to an eye care specialist during this time period was a breach of the applicable standard of care.

23. Ms. Copeland lost sight in her left eye on or about May 2007. Despite her ongoing complaints and pleas to jail staff regarding this condition, she was not allowed to see a specialist until September 27, 2006.

24. There is no record of Ms. Copeland being seen by a physician for her condition until September 27, 2006. At which time Dr. Murray noted that Ms. Copeland had an eye disease and not an infectious condition. Rather than immediately refer Ms. Copeland to an eye care specialist, PHS's agents and employees merely made notes of her complaints and consulted with nurse practitioners and a medical doctor on one occasion prior to September 27, 2006. The failure to immediately refer COPELAND to an eye care specialist during this time frame constituted a continuing and ongoing event or series of events, in whole and in each instance constituting a breach of the standard of care.

25. On April 22, 2006 Defendant Dr. Monastero, a PHS employee who was also the Escambia County Jail's Medical Director, prescribed Gentamicin eye

6

drops for COPELAND.

26.     Defendant Monastero was trying to treat a suspected eye infection of eight months duration, which should have warranted an immediate referral to an eye care specialist. The failure to immediately refer COPELAND to an eye care specialist during this time frame remained a breach of the standard of care.

27.     Dr. Murray treated COPELAND for the next several months and tried a corneal transplant but the attempts failed and she ultimately had to have Enucleation of the left eye on June 13, 2007.

28.     But for the above-noted breaches of the standard of care, in whole or in part, more likely than not, to a reasonable degree of medical certainty, COPELAND's blindness would have been avoided.

29.     COPELAND has satisfied all conditions precedent to bringing this lawsuit including, but not limited to complying with the medical malpractice pre-suit requirement of providing Defendant PHS, its agents and employees, with a Notice of Intent to Initiate Litigation for Medical Malpractice. COPELAND filed a Petition for Extension of Medical Negligence Statute of Limitations pursuant to Fla.Stat. §766.104(2) with the Circuit Court in and for Escambia County, Florida on March 7, 2008.

## COUNT I
## CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983
## INDIVIDUAL CAPACITY DELIBERATE INDIFFERENCE TO SERIOUS

7

## MEDICAL NEEDS CLAIMS

30.    Plaintiff re-alleges paragraphs 1 through 29 as if fully set forth herein.

31.    At all times material hereto, Defendants, jointly and severally, had a duty under the Constitution of the United States of America, to provide adequate medical care to those inmates, including Plaintiff Copeland, in the custody of the Escambia County Sheriff in the Escambia County Jail.

32.    At all times material hereto, Defendants MONASTERO, McCORMACK, and FRANKLIN had a further duty under the Fourteenth Amendment to the United States Constitution not to be deliberately indifferent to the known serious medical needs of pre-trial detainees in custody at the Escambia County Jail. This duty arose from the individual Defendants' capacity as agents or employees of PHS, who had contracted with the Escambia County Sheriff to oversee and provide all medical services at the Escambia County Jail.  Because the Escambia County Sheriff had a non-delegable duty to provide medial services to inmates and pre-trial detainees in the Escambia County Jail, PHS and its agents and employees acted under color of law while providing these services.

33.    At all times material hereto, COPELAND was an inmate in the Escambia County Jail and in the custody of the Escambia County Sheriff.

34.    While COPELAND was incarcerated at the Escambia County Jail, she suffered from a serious medical need – to wit, she experienced known signs and symptoms of an eye disease, which, if not promptly and properly treated, would and

8

did result in total blindness in her left eye.

35.    Defendants MONASTERO, McCORMACK, and FRANKLIN were deliberately indifferent, jointly and severally, to COEPLAND's serious medical needs. All three of these individuals were aware of Ms. Copeland's history of eye problems while she was incarcerated and was complaining of her eye redness, swelling, tearing, pain, and protruding as described above. Given her medical history, Defendants MONASTERO, McCORMACK, and FRANKLIN were aware that when COPELAND was at substantial risk of serious harm if she did not receive immediate treatment from a qualified eye care specialist. Despite their knowledge of this risk, each of the individual Defendants intentionally or by the exercise of deliberate indifference, failed or refused to provide Ms. Copelnad with the medical care and access to additional specialized medical care known to be necessary under the circumstances.

36.    Had any one of Defendants, MONASTERO, McCORMACK, or FRANKLIN ensured that Ms. Copeland saw an eye care specialist for her complaints in a timely fashion, the blindness Ms. Copeland has suffered would likely have been prevented through conservative care.

37.    As a direct, proximate and foreseeable result of Defendants MONASTERO's, McCORMACK's and FRANKLIN's deliberate indifference to Plaintiff COPELAND's known serious medical needs, COPELAND has suffered the injuries described in this complaint, including bodily injuries and resulting pain and

9

suffering, disability, mental anguish, loss of ability to enjoy life, expenses of medical and nursing care and treatment, and other losses including the aggravation of pre-existing conditions. These injuries and losses are permanent and continuing, and COPELAND will suffer such losses in the future.

WHEREFORE, Plaintiff prays that this Honorable Court grant the following relief against Defendants MONASTERO, McCORMACK and FRANKLIN on her civil rights claim brought pursuant to 42 U.S.C. §§1983 and 1988:

A. Judgment for compensatory damages against Defendants MONASTERO, McCORMACK and FRANKLIN;

B. Judgment for punitive damages against Defendants MONASTERO, McCORMACK, and FRANKLIN;

C. Judgment for attorney's fees pursuant to 42 U.S.C. §1988, together with the costs and expenses of this civil rights action;

D. Judgment for pre-judgment interest on all economic losses, including pre-judgment interest on attorney's fees for delay in payment;

E. A trial by jury on all issues so triable; and

F. Such other and further relief that this Court may deem just, proper and appropriate.

## COUNT II
## STATE LAW CLAIM FOR MEDICAL NEGLIGENCE
## AGAINST DEFENDANT PHS

38.    This is a cause of action, under the common law of the State of

10

Florida, for medical negligence. Such claim arises from a common nucleus of operative facts with violation(s) of 42 U.S.C. §1983 as set forth above.

39. Plaintiff re-alleges paragraphs 1 through 29 as though more fully set forth herein.

40. At all times material hereto, Defendants MONASTERO, McCORMACK, and FRANKLIN were health care practitioners licensed by the State of Florida.

41. At all times material hereto, Defendants Dr. MONASTERO, McCORMACK, and FRANKLIN were agents or employees of Defendant PHS, acting within the course and scope of their employment.

42. Plaintiff has complied with all conditions precedent necessary for the maintenance of this lawsuit, including, but not limited to, compliance with the requirements of Florida Statutes, Chapter 766 and Florida Statute, §766.104(1).

43. Defendants Dr. MONASTERO, McCORMACK, and FRNAKLIN were all negligent with respect to their treatment of COPELAND's known serious medical needs as described in paragraphs 14-25 above. Given her medical history, Defendants MONASTERO, McCORMACK, and FRANKLIN were aware that when COPELAND was at substantial risk of serious harm if she did not receive immediate adequate treatment including treatment from a qualified eye care specialist. Despite their knowledge of this substantial risk, all three individual Defendants failed to provide COPELAND with the necessary medical care. This failure breached the

11

applicable standard of care for all three individual Defendants.

44.     Defendant PHS is liable for the negligence committed by each of the Defendants, MONASTERO, McCORMACK, and FRANKLIN, for their joint and respective medical treatment of COPELAND, or lack thereof, in that the negligence was committed within the course and scope of Defendants' MONASTERO's, McCORMACK's, and FRANKLIN's employment with Defendant PHS, such that the doctrine of respondeat superior applies to this action.

45.     As a direct and proximate result of the misconduct alleged above, COPELAND suffered bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expense of medical and nursing care and treatment, loss of ability to enjoy life and may have aggravated a pre-existing condition. These injuries and losses are permanent and continuing, and Mr. Allen will suffer such losses in the future.

46.     Plaintiff Copeland attaches to this Complaint her Certificate of Investigation under Florida Statute § 766.104(1) and such certificate is made part hereof.

WHEREFORE, Plaintiff prays for judgment for compensatory damages against Defendant PHS, together with costs of this action, pre-judgment interest on all economic losses, and a trial by jury on all issues so triable.

## CERTIFICATE OF INVESTIGATION UNDER FLA.STAT. §766.104(1)

Counsel for Plaintiff certifies that e has conducted a reasonable investigation

12

that gave rise to a good faith belief that grounds exist for an action against the

named Defendants.

MARCUS J. MICHLES II
Florida Bar No.: 623806
CHRISTOPHER P. JANES
Florida Bar No.: 0100072
MICHLES & BOOTH, P.A.
501 Brent Lane
Post Office Box 13367 (32591-3367)
Pensacola, Florida 32503
(850) 438-4848
Attorneys for Plaintiff

DATE: 12/19/08

13